# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **WESTERN & SOUTHERN FINANCIAL GROUP, INC.**<br>400 Broadway<br>Cincinnati, OH 45202<br><br>　　　Plaintiff,<br><br>v.<br><br>**ZL TECHNOLOGIES INC.**<br>c/o Kon Leong, Registered Agent<br>860 N. McCarthy Blvd., Ste. 100<br>Milpitas, CA 95035<br><br>　　　Defendant. | Case No. _____<br><br>Judge _____ |

## COMPLAINT

For its complaint against defendant ZL Technologies Inc. ("ZL"), plaintiff Western & Southern Financial Group, Inc. ("Western & Southern") states as follows:

### NATURE OF THE ACTION

1. Western & Southern brings this action under 28 U.S.C. § 2201 and New York law to confirm the parties' respective rights under a Master Software License Agreement (the "Agreement") and corresponding Statement of Work ("SOW"). Although Western & Southern paid *more than $2 million* to ZL, which includes significant fees for maintaining software that failed to perform the essential functions specified in the Agreement and SOW, ZL now claims that it is entitled to additional payment from Western & Southern because Western & Southern purportedly over licensed the software. A present and actual controversy exists between the parties, and Western & Southern seeks a declaration that (1) ZL breached the Agreement and SOW

by performing and charging Western & Southern for ineffective and useless maintenance on software that failed to perform a core function under the Agreement; (2) Western & Southern did not breach the license provisions of the Agreement; and (3) Western & Southern need not pay any further amounts to ZL.

## PARTIES

2. Western & Southern is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Western & Southern is the parent company to a number of subsidiaries offering life insurance, among other products and services.

3. ZL is a California corporation with, upon information and belief, a principal place of business in Milpitas, California. ZL refers to itself as a "leader in information management for the past two decades, solving the biggest compliance, governance and privacy challenges for companies across the Fortune 500 and beyond."[1]

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

5. This Court has personal jurisdiction over ZL because ZL transacts business in the state of Ohio.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district. In fact, the Agreement forming the basis of this dispute relates to the management and storage of Western & Southern's emails and data generated in Cincinnati, Ohio. Moreover, the SOW explicitly states

---

[1] *See* https://www.zlti.com/company/ (last accessed on November 19, 2024).

that certain tasks will be performed in this judicial district at Western & Southern's offices in Cincinnati, Ohio.

## FACTUAL ALLEGATIONS

### *The Parties Enter the Agreement and SOW*

7. In December 2014, ZL and Western & Southern entered the Agreement whereby ZL licensed to Western & Southern certain software in support of Western & Southern's "internal business operations in the quantities and at the use level described in the Agreement." Agreement at § 2(a).

8. Specifically, Western & Southern contracted with ZL to provide an email archive tool that would store Western & Southern's emails for compliance and eDiscovery reasons in a journal.

9. To this point, the SOW states "the Enterprise has a goal of improving documents and records management to mitigate legal and compliance risk and reduce storage costs." SOW at App'x C.

10. Further, the SOW specifies that "[c]ertain technical capabilities and business processes will be required to make those goals" including but not limited to the "[a]bility to determine and schedule deletion of documents/records according to the retention schedule" and support of "secure destruction techniques for electronic documents and records." *Id.*

11. The Agreement also specifies that Western & Southern "shall pay to [ZL] an annual maintenance fee" and that "fees associated with Product Maintenance [after the inception of the Agreement] are payable annually during the Term in advance due upon the anniversary of the Maintenance Start Date for the upcoming year." Agreement at §§ 13(b); 4(c).

12. The purpose of the maintenance services was to provide support to Western & Southern and maintain the software that ZL provided to Western & Southern.

### *ZL Breaches the Agreement and SOW*

13. When the parties entered the Agreement, it was understood that ZL would implement its software in accordance with Western & Southern's email retention policy whereby emails would be safely deleted after certain specified periods.

14. The launch of ZL's software, however, involved two components: (1) migrating some emails from an old archival tool to the ZL journal for registered representatives; and (2) beginning to store emails in the journal for the first time.

15. When the time came to implement the retention policy (meaning emails would be deleted for the first time), ZL's software failed to delete anything at all.

16. ZL should have known to expect a large quantity of emails as it had been working with Western & Southern around three (3) years on journaling Western & Southern's emails in addition to an extensive implementation process.

17. To date, the ZL software has never worked as required under the SOW because it cannot delete emails in accordance with the retention schedule adopted by Western & Southern.

18. As a result, Western & Southern has never received the full benefit of ZL's software in the more than 10 years it has been paying for the software.

19. In addition to paying ZL for software that never met a core requirement of the Agreement and SOW, Western & Southern had to incur additional costs due to ZL's breaches and the software's shortcomings.

4

20. For example, because Western & Southern was unable to implement the retention policy, it had to collect and produce emails for far longer than it otherwise would have for litigation, audits, and other reviews, which has resulted in significant costs.

21. In addition, Western & Southern had to commit hours of technical personnel time to address system inefficiencies.

22. Further, while Western & Southern encountered additional costs by using the software, ZL continued to charge—and Western & Southern continued to pay—maintenance fees on software that did not function.

23. In total, Western & Southern has paid more than $2,000,000 to ZL, which includes significant payments for useless product maintenance fees on continuously failing software.

24. As a result of the continuing failures, Western & Southern has also expended over $1 million in its efforts to migrate all of its data away from ZL and onto new software.

*ZL Threatens to File Suit Against Western & Southern*

25. In May and June 2024, ZL requested to audit Western & Southern's usage of the ZL software license, likely because ZL knew that Western & Southern would terminate its relationship with ZL at the end of the Agreement's term.

26. Initially, Western & Southern provided ZL with the requested information.

27. On November 15, 2024, Western & Southern sent formal notice of termination of the Agreement to ZL.

28. On November 19, 2024, ZL, through counsel, wrote Western & Southern stating: "W&S purchased 5,000 user licenses on December 23, 2014, under [the Agreement]" and "on May 20, 2024, a [Western & Southern] employee provided a screenshot from ZL's sysadmin page, showing 21,101 total users, far exceeding the user licenses Western & Southern purchased."

29. ZL further stated that "[w]e anticipate filing a lawsuit in which W&S will be named as a defendant" and notified Western & Southern of its duty to preserve relevant documents, materials, and electronically stored information.

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

30. Western & Southern alleges and incorporates by reference each of the foregoing allegations.

31. As described above, an actual controversy exists between Western & Southern and ZL about the parties' rights under the Agreement and SOW, including (1) whether ZL breached the maintenance terms of the Agreement by performing and charging Western & Southern for useless maintenance on software that never worked; and (2) whether Western & Southern breached the Agreement by over using the licensed software

32. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Western & Southern seeks a declaration from the Court that (1) ZL breached the Agreement and SOW by performing and charging Western & Southern for useless maintenance on software that failed to operate in accordance with the Agreement's specifications and requirements; (2) Western & Southern did not breach the license provisions of the Agreement; and (3) Western & Southern need not pay any further amounts to ZL.

### SECOND CLAIM FOR RELIEF
### (Breach of Contract)

33. Western & Southern alleges and incorporates by reference each of the foregoing allegations.

34. A valid contract in the form of the Agreement and SOW exists between Western & Southern and ZL.

35. Western & Southern has fully performed in accordance with the Agreement and SOW.

36. With respect to maintenance services, the Agreement requires, among other things, ZL to provide customer support, classify Western & Southern's issues with the software, and "promptly provide [Western & Southern] with all Upgrades, Patches, and Hotfixes along with any associated Documentation." *See* Agreement at § 13.

37. ZL has breached the Agreement and SOW by, among other things, performing and charging Western & Southern for ineffective maintenance on software that never worked in accordance with the Agreement and SOW by virtue of its failure to implement Western & Southern's email retention policy.

38. As a result of ZL's breaches, Western & Southern has suffered damages including, but in no way limited to, the amounts Western & Southern paid to ZL for maintenance fees for software that never fully performed as advertised and the additional costs Western & Southern incurred due to ZL's breaches.

## RELIEF REQUESTED

**WHEREFORE**, Western & Southern requests judgment in its favor and prays:

1. That this Court issue a declaration that (1) ZL breached the Agreement by performing and charging Western & Southern for ineffective maintenance on software that never worked as advertised; (2) Western & Southern has not breached the license provisions of the Agreement; and (3) Western & Southern owes nothing further to ZL.

2. That this Court enter judgment against ZL for its breach of the Agreement and SOW and award damages to Western & Southern in an amount greater than $75,000;

3. That this Court enter judgment against ZL in the amount of reasonable attorneys' fees and costs incurred by Western & Southern litigating this matter consistent with § 14(e) of the Agreement;

4. That Western & Southern receive all other relief, both legal and equitable, as is just and appropriate.

Respectfully submitted,

*/s/ Eric W. Richardson*
Eric W. Richardson (0066530), Trial Attorney
Brent D. Craft (0085374)
Daniel P. Shinkle (0099656)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio 45202
Tel: (513) 723-4000
Fax: (513) 852-7885
Email: ewrichardson@vorys.com
bdcraft@vorys.com
dpshinkle@vorys.com

*Attorneys for Plaintiff Western & Southern Financial Group, Inc.*